IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

STACEY HAWKINS,

        Plaintiff,

vs.

        Case No. 04-1328-JTM

MCI, a Delaware corporation,

        Defendant.

## MEMORANDUM AND ORDER

This matter comes before the court on the Defendant's Motion to Dismiss (Dkt. No. 6). Defendant advances four main arguments: 1) that plaintiff's claim is pre-empted by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq.; 2) that plaintiff's complaint fails to state a claim for fraudulent misrepresentation and negligent misrepresentation; 3) that plaintiff's complaint does not state a claim of intentional interference with a business advantage or relationship; and 4) that MCI did not owe a duty to plaintiff regarding its communications with Raytheon. Plaintiff contests these claims and argues that her complaint survives a motion to dismiss. After reviewing the parties' arguments, the court finds as set forth herein.

**I. BACKGROUND**

On October 13, 2004, plaintiff Stacey Hawkins brought this action in federal district court against MCI. In relevant part, the complaint alleges:

1. Ms. Hawkins began working for MCI in October 2002 and held the position of Human Resources Generalist.  Complaint ¶¶ 6 and 7.

2. In a June 25, 2004 letter, MCI informed Hawkins and other employees that the Wichita facility would be closing and that their employment would terminate effective August 24, 2004. Complaint ¶ 9.

3. Defendant offered Ms. Hawkins the severance benefits referenced in the June 25 correspondence and as provided under MCI's Severance Plan.  The letter states: "You are required to continue working in your current position through close of business 8/24/04."  Ms. Hawkins accepted the offer of severance benefits which was for eight weeks of additional pay.  Complaint ¶ 10.

4. Defendant allowed certain employees to work adjusted or modified schedules between June 25 and August 24, 2004 that would allow those employees to receive severance benefits. Complaint ¶ 11.

5.  Defendant MCI, through its agent and employee Kimberly Brown, Human Resources Manager for MCI, agreed that Ms. Hawkins would be allowed to work an adjusted schedule for one week prior to the August 24 closing date that would allow Ms. Hawkins to receive her severance benefits.  Complaint ¶ 12.

6. Ms. Hawkins accepted employment with another employer prior to August 24, 2004, and she was required to commence work with the new employer prior to that date.  Ms. Hawkins advised Kimberly Brown that she would need to work the previously agreed upon adjusted schedule for the week of August 2, 2004.  Ms. Brown reneged on her prior oral agreement and advised Ms. Hawkins that she would be required to work her usual hours and that no adjusted schedule would be permitted.

Complaint ¶ 13-15.

7.  MCI denied Ms. Hawkins the severance benefits. Complaint ¶ 16.

8. Prior to the Wichita facility closing, Ms. Hawkins applied for a position at Raytheon Aircraft Company ("Raytheon").  Complaint ¶ 10.

9. Another MCI employee, Clancy Hoheisel, also applied for a position at Raytheon. Complaint ¶ 18.

10. Raytheon contacted Ms. Brown for a reference check on Ms. Hawkins and Ms. Hoheisel. Complaint ¶ 23.

11. Ms. Hawkins alleges that Ms. Brown "misrepresented the respective qualifications, skill, experience, and job responsibilities of Ms. Hoheisel and Ms. Hawkins and offered information to assist Ms. Hoheisel in obtaining the Raytheon position knowing that Ms. Hawkins had better qualifications, skill, and experience for the position." Complaint ¶ 23.

12. Raytheon offered the position to Ms. Hoheisel who accepted and is now employed at Raytheon. Complaint ¶ 25. Raytheon did not offer Ms. Hawkins a position. Complaint ¶ 25.

13. Ms. Hawkins makes claims against MCI as a result of Brown's alleged conduct for fraudulent misrepresentation, negligent misrepresentation, intentional interference with business advantage or relationship, and negligence. See generally Complaint pp. 4-7.

14. Ms. Hawkins also alleges that MCI breached a contract with her to provide severance benefits pursuant to the terms of the Severance Plan. Complaint ¶ 28.

## II. STANDARD FOR MOTION TO DISMISS

"A Rule 12(b)(6) motion to dismiss will be granted only if it appears beyond a doubt that the

plaintiff is unable to prove any set of facts entitling [him] to relief under [his] theory of recovery." Poole v. County of Otero, 271 F.3d 955, 957 (10th Cir. 2001) (citing Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). "The court must accept all the well-pled allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." Boyd v. Runyon, No. 94-1557-JTM, 1996 WL 294330, at *1 (D. Kan. May 23, 1996) (citing Williams v. Meese, 926 F.2d 994 (10th Cir. 1991)). "The [c]ourt, however, need not accept as true those allegations that are conclusory in nature, i.e., which state legal conclusions rather than factual assertions." Fugate v. Unified Gov't of Wyandotte, 161 F. Supp. 2d 1261, 1263 (D. Kan. 2001) (citing Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991)).

## III. ANALYSIS

### A. Whether ERISA Pre-empts Plaintiff's Breach of Contract Claim

ERISA, 29 U.S.C. § 1001 et seq., serves to protect the interests of participants in employee benefit plans by providing uniform minimum federal standards. 29 U.S.C.A § 1001(c). ERISA covers two types of employee benefit plans: an employee welfare benefit plan and employee pension benefit plan. Massachusetts v. Morash, 490 U.S. 107, 113, 109 S.Ct. 1668, 1672 (1989) citing ERISA § 3(3), 29 U.S.C. § 1002(3). An employee "welfare plan" is any "plan, fund, or program" maintained for the purpose of providing medical or other health benefits for employees or their beneficiaries "through the purchase of insurance or otherwise." District of Columbia v. Greater Washington Bd. of Trade, 506 U.S. 125, 127, 113 S.Ct. 580, 582 (D.C. Cir. 1992) (citing § 3(1), 29 U.S.C. § 1002(1)). ERISA applies generally to all employee benefit plans sponsored by an employer or employee organization. Id. (citing § 4(a), 29 U.S.C. § 1003(a)). Some plans are exempt from ERISA coverage

under § 4(b) including those "maintained solely for the purpose of complying with applicable workmen's compensation laws or unemployment compensation or disability insurance laws." Id. (citing § 4(b)(3), 29 U.S.C. § 1003(b)(3)).  Since severance plans typically include employee welfare benefits, they may be subject to ERISA.  See, e.g., Adams v. Cyprus Amax Minerals Co., 149 F.3d 1156, 1158 (10th Cir. 1998) citing ERISA 29 U.S.C. § 1002(1).

Pursuant to § 514(a), ERISA includes a broad pre-emption provision that supercedes "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan."  Straub v. Western Union Telegraph Co., 851 F.2d 1262, 1263 (10th Cir. 1988).  See also Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 45-46, 107 S.Ct. 1549, 1552, 95 L.Ed.2d 39 (1987) (citation omitted) (noting that the "express pre-emption provisions of ERISA are deliberately expansive, and designed to 'establish pension plan regulation as exclusively a federal concern.' ").  The Tenth Circuit holds that no liability exists under ERISA for purported oral modification of the terms of an employee benefit plan.  Straub v. Western Union Telegraph Co., 851 F.2d 1262, 1265 (10th Cir. 1988).  See Nachwalter v. Christie, 805 F.2d 956, 959-61 (11th Cir. 1986).  This is because employee benefit plans must be established and maintained according to written instruments, which precludes oral modification.  Nachwalter v. Christie, 805 F.2d at 960 (quoting 29 U.S.C. § 1102(a)(1)).

MCI's Company Severance Plan provides that it is "intended to be construed under and governed by ERISA."  Dkt. No. 7, Exhibit A, at 8.  The plan also states that the "Plan Administrator" and the "Named Fiduciary" are defined as under ERISA.  Dkt. No. 7, Exhibit A, at 1.  The plan covers the terms of continuing medical and dental coverage, which would classify it as a "welfare benefit plan"

under ERISA. Dkt. No. 7, Exhibit A, at 6. Clearly, there is no question whether MCI intended for its Severance Plan to be subject to the terms of ERISA.

Plaintiff makes several arguments contesting ERISA's applicability. They can be categorized as generally two types of arguments: 1) that she lacked notice of ERISA's applicability; and 2) that the Severance Plan was not applicable to her.

In her claim of lack of notice, Ms. Hawkins argues: 1) that the letter dated June 25, 2004 does not state that ERISA governs the severance package; 2) that Ms. Brown did not specifically state that the oral agreement was subject to ERISA; and 3) that plaintiff received no summary of plan from MCI. As to the first argument, defendant concedes that the letter does not include reference to ERISA. However, the letter specifically states that "[i]f you are eligible for severance benefits <u>in accordance with the Severance Plan</u>, you will receive severance pay..." Dkt. No. 16, Exhibit 1 (emphasis added). The letter, at least, gave Ms. Hawkins notice that her severance was subject to the terms of another document. Plaintiff also acknowledged in her complaint that she was aware that her benefits would be subject to the Severance Plan, even if she did not get a copy of the actual severance plan. Complaint ¶ 10.

Ms. Hawkins specifically argues that ERISA does not preclude enforcement of an oral agreement between Ms. Hawkins & MCI. If an oral agreement modified the hourly schedule but was still to be subject to the Severance Plan, then plaintiff's argument has no merit. As set forth in the complaint, Ms. Hawkins states that "[d]efendant entered into a written and/or oral contract with Ms. Hawkins providing that Ms. Hawkins would be provided severance benefits pursuant to the terms of

6

the June 25, 2004, correspondence and the Company Severance Plan." Complaint ¶ 28. As a matter of law, a plan subject to ERISA cannot be modified by oral agreement. Straub, 851 F.2d at 1265. Any oral agreements that the parties made is thus invalid. Whether Ms. Brown specifically stated that ERISA applies to the oral agreement is irrelevant.

Relatedly, Ms. Hawkins argues that MCI did not provide a copy of the Summary Plan Description to Ms. Hawkins as ERISA requires. The relevant statute provides that: "[t]he administrator shall furnish to each participant, and each beneficiary receiving benefits under the plan, a copy of the summary plan description, and all modifications and changes..." 29 U.S.C.A. § 1024(b)(1). The question becomes whether Ms. Hawkins would still be subject to the Severance Plan's terms if she did not receive this summary. Neither party cites to case law that clarifies the issue of whether notice is required. Defendant only cites a penalty provision, which does not resolve the issue. See Dkt. No. 20, at 3.

To clarify the question of notice, the court turns to the purposes of ERISA and plaintiff's complaint. For several reasons, plaintiff's notice argument is problematic. First, plaintiff would be protected under ERISA whether or not she had notice of ERISA's coverage because such were the terms of the Severance Plan. See 29 U.S.C.A § 1001(c). Since ERISA prevents the employer from arbitrarily changing the terms of the Severance Plan, plaintiff should be bound by a similar standard. Second, since plaintiff's entire breach of contract claim relies on the terms of the Severance Plan, her essential claim rests on her assent to the terms of the plan, even if they were later orally modified. See Complaint ¶ 10. By way of the June 24, 2004 letter, plaintiff was aware that her severance agreement

7

was subject to the terms of the Severance Plan. The reference to the MCI's Severance Plan in the letter provides sufficient notice to Ms. Hawkins of the terms of her layoff. It seems inconsistent and contradictory to assert that the defendant breached the terms of the Severance Plan and at the same time claim that plaintiff did not know the terms of the Severance Plan. Finally, receiving a Summary Plan Description would not resolve the issue of notice. Since a summary would likely state the nature of benefits, it is not clear that it would include the fact that the Severance Plan is subject to ERISA.

Plaintiff's argument as to the lack of a Summary Plan Description raises the additional issue of whether MCI provided the necessary paperwork to its employees. If copies of the plan had not been distributed, then there may be an additional question of whether MCI may be subject to penalties under ERISA for not doing so. The court is skeptical as to whether a large company anticipating layoffs would not distribute summaries of its severance agreement. Even if Ms. Hawkins had not requested some information, other employees must have received some information about the severance terms. If plaintiff wishes to allege lack of compliance to ERISA, then she may move to amend her complaint and the court will determine whether amendment is appropriate. The lack of notice in itself is not sufficient to make ERISA inapplicable to the Severance Plan.

In the alternative, Ms. Hawkins argues that MCI's Severance Plan is not applicable to plaintiff because the oral agreement as to her hours exempted her from the plan. In making this argument, plaintiff contradicts her complaint. Plaintiff's complaint sets out that she is pursuing her "written and/or oral" breach of contract claim for severance benefits pursuant to the June 25, 2004 letter and the Company Severance Plan. To now say that she is not an eligible employee undermines the breach of contract claim in the complaint.

While the parties did not raise this argument, the court notes that Ms. Hawkins' complaint alleges that she would be allowed to work an adjusted schedule for one week prior to the August 24 closing date. Complaint ¶ 12. Then, Ms. Hawkins alleges that she asked Ms. Brown if she could work an adjusted schedule for the week of August 2, 2004. Complaint ¶ 14. If this was the case, then there was no meeting of the minds as to the terms of the oral agreement of adjustment. It appears that the oral agreement was only for the week prior to August 24, 2004, and Ms. Hawkins was asking for an adjustment for two weeks prior to the originally agreed upon date. Although this difference may have been an adequate basis to dismiss the breach of contract claim, the court does not decide the issue on this basis.

Because MCI's Severance Plan is subject to ERISA, plaintiff should have pursued the administrative remedies available. The court finds that plaintiff's claim of breach of contract is pre-empted by ERISA.

**B. Whether Plaintiff States a Claim for Fraudulent Misrepresentation and Negligent Misrepresentation**

To state a claim for either fraudulent misrepresentation or negligent misrepresentation, defendant argues that plaintiff must establish that MCI provided her with false information and she relied upon that false information to her detriment. Plaintiff responds that this is a misstatement of the standard.

Under Kansas law, a claim of fraudulent misrepresentation requires that the plaintiff establish the following elements: 1) an untrue statement of fact; 2) known to be untrue by the party making it,

9

made with the intent to deceive or recklessly made with disregard for the truth; 3) justifiable reliance on the statement to plaintiff's detriment; 4) acts to plaintiff's injury; and 5) damage. Zhu v. Countrywide Realty, Co., Inc. 165 F. Supp. 2d 1181, 1201 (D. Kan. 2001) (citations omitted). "Stated otherwise, to make an actionable case for fraud, plaintiff must plead and prove misrepresentations of fact known by defendant to be untrue or made with reckless disregard for the truth, and plaintiff must have reasonably relied upon the misrepresentations to her detriment." Id. (citing Tetuan v. A.H. Robins Co., 241 Kan. 441, 465-67, 738 P.2d 1210, 1230 (1987) (emphasis added).

Kansas courts have adopted the standard of the Restatement (Second) of Torts § 552 for negligent representation. See Mahler v. Keenan Real Estate, Inc., 255 Kan. 593, 876 P.2d 609, 616 (1994). A cause of action for negligent misrepresentation differs from that of fraudulent misrepresentation only with respect to the standard by which the defendant is charged with knowledge of the representation's falsity. Rodriguez v. ECRI Shared Services, 984 F. Supp. 1363, 1366 (D. Kan. 1997) citing Kreekside Partners v. Nord Bitumi U.S., Inc., 963 F. Supp. 959, 966 (D. Kan.1997) (other citation omitted). Generally, Kansas law does not recognize a claim of misrepresentation made to a third party as satisfying the requirement of plaintiff's reliance. Rodriguez, 894 F. Supp at 1366. A limited exception has been permitted in the context of medical product liability cases where a manufacturer made misrepresentations to a plaintiff's physician. Tetuan, 241 Kan. at 463-465. In such circumstances, the Kansas Supreme Court found that the alleged misrepresentations made to the doctor by the manufacturer satisfied plaintiff's pleading requirement. Id. at 465. The Tenth Circuit has declined to extend Tetuan's reasoning to other contexts. Burton v. R.J. Reynolds Tobacco Co., 397 F.3d 906, 912 (10th Cir. 2005) (declining to apply the reasoning in

10

Tetuan to a tort action of fraudulent concealment against cigarette manufacturers).

Plaintiff has not shown that MCI provided her with false information upon which she relied to her detriment. Her complaint only alleges that MCI provided Raytheon with false information upon which Raytheon relied to Hawkins' detriment. The narrow exception for third parties is not applicable in this situation, and thus the general rule is more appropriately applied to this case. Having found Kansas' general rule applicable here, the court dismisses plaintiff's claim of fraudulent misrepresentation and negligent misrepresentation.

**C. Whether Plaintiff Sufficiently States a Claim of Intentional Interference with Business Advantage or Relationship**

Defendant alleges that plaintiff fails to state facts to support that MCI's alleged interference was wrongful, intentional, or that it acted with malice. Plaintiff responds that defendant misstates the standard and confuses the issue of wrongful means and improper conduct.

Under Kansas law, tortious interference with prospective business advantage or relationship is intended to protect future or potential contractual business relationships. Ayres v. AG Processing Inc., 345 F. Supp. 2d 1200, 1210 (D. Kan. 2004). See Turner v. Halliburton Co., 240 Kan. 1, 12, 722 P.2d 1106 (1986). The elements essential to recovery for recovery are: 1) the existence of a business relationship or expectancy with the probability of future economic benefit to the plaintiff; 2) knowledge of the relationship or expectancy by the defendant; 3) that, except for the conduct of the defendant, plaintiff was reasonably certain to have continued the relationship or realized the expectancy; 4) intentional misconduct by defendant; and 5) damages suffered by plaintiff as a direct or proximate cause

of defendant's misconduct. Ayres, 345 F. Supp. 2d at 1210 citing Burcham v. Unison Bancorp, Inc., 276 Kan. 393, 424, 77 P.3d 130, 151 (2003).

Defendant notes that even if the evidence is sufficient to prove the intent requirement of the cause of action, the conduct must be of sufficient severity from which a reasonable jury might infer malice. See Rodriguez v. ECRI Shared Services, 984 F. Supp. 1363 (D. Kan 1997); Turner v. Halliburton Co., 240 Kan. 1, 12 (1986). Since some conduct may be privileged or justified, the Kansas Supreme Court has restated these elements as requiring evidence of improper conduct. Reazin v. Blue Cross and Blue Shield of Kansas, Inc., 899 F.2d 951, 977 (10th Cir. 1990) (citing Turner v. Halliburton Co., 240 Kan. 1, 722 P.2d 1106, 1115 (1986)). In other words, the plaintiff must prove "actual malice" to overcome a claim of qualified privilege. Id. In determining whether conduct is proper or improper, Kansas courts refer to the Restatement (Second) of Torts § 767 (1979), which evaluates the following factors: a) the nature of the actor's conduct; b) the actor's motive; c) the interests of the other with which the actor's conduct interferes; d) the interests sought to be advanced by the actor; e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other; f) the proximity or remoteness of the actor's conduct to the interference; and g) the relations between the parties. Turner, 722 P.2d at 1116-17.

Based on the allegations in plaintiff's complaint, there are sufficient facts to proceed with a claim of intentional interference with a prospective business advantage. Plaintiff has alleged the existence of a future business relationship with Raytheon. Complaint ¶¶ 17, 43. Ms. Brown had knowledge of Ms. Hawkins' potential employment with Raytheon. Complaint ¶ 45. Plaintiff was reasonably certain to

have continued the relationship, except for the conduct of Ms. Brown as an agent of MCI. Complaint ¶ 46. The actions constituted intentional misconduct. Complaint ¶ 47. Ms. Hawkins alleges that she failed to obtain employment as a direct or proximate result of defendant's interference and suffered damages as a consequence. Complaint ¶ 48. If Ms. Brown made misrepresentations of plaintiff's skills and assisted in preparing a resume for Ms. Hoheisel that contained misrepresentations and accuracies overstating her skills, then the jury could reasonably infer malice on the part of Ms. Brown as an agent of MCI. See Complaint ¶¶ 18-25. While there may be remaining questions of fact as to the nature of the relationship between the parties, these are matters for discovery. At present, plaintiff states sufficient facts to proceed with her claim.

**D. Whether MCI Owes a Duty to Ms. Hawkins for a Claim of Negligence**

Defendant argues that plaintiff has failed to state a claim for negligence because MCI owed no duty to Ms. Hawkins. Plaintiff argues that she states a claim to overcome a motion to dismiss.

To state a claim for negligence, a plaintiff must prove the existence of a duty, breach of that duty, injury and a causal connection between the duty breached and the injury suffered. Hall v. Kansas Farm Bureau, 274 Kan. 263, 279 (2002). Whether a duty exists is a question of law. Id. citing Nero v. Kansas State University, 253 Kan. 567, Syl. ¶ 1, 861 P.2d 768 (1993).

In support of her contention that MCI owes a duty, plaintiff cites Kan. Stat. Ann. § 44-117. It provides: "[a]ny employer of labor in this state, after having discharged any person from his service, shall not prevent or attempt to prevent by word, sign or writing of any kind whatsoever any such

discharged employee from obtaining employment from any other person, company or corporation, except by furnishing in writing, on request, the cause of such discharge." Kan. Stat. Ann. § 44-117. The statute was intended to prevent blacklisting and requires a criminal blacklisting conviction of an employer in order to bring a civil blacklisting claim.  See Anderson v. United Telephone Co. of Kansas, 933 F.2d 1500 (10th Cir. 1991); Kan. Stat. Ann. §§ 44-117 - 44-119.  Plaintiff was not a discharged employee at the time of her interview with Raytheon, so she does not qualify for its protection. Furthermore, she does not allege that the employer received a criminal blacklisting conviction so that she can bring a civil claim under the statute.

Since plaintiff has not shown a sufficient basis for duty as a matter of law, the court dismisses this count.

IT IS ACCORDINGLY ORDERED this 13th day of May, 2005, that the court grants in part and denies in part defendant's Motion to Dismiss (Dkt. No. 6).

s/ J. Thomas Marten
J. THOMAS MARTEN, JUDGE